41 F.3d 671
 309 U.S.App.D.C. 275, Util. L. Rep. P 14,018
 OCONTO FALLS, WI, and the American Public Power Association,
Petitioners,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
N.E.W. Hydro, Inc.; Wisconsin Electric Power Company; City
of Oswego, New York; Carl Hitchcock; Energie
Development Company, Inc., Intervenors.
 No. 93-1340.
United States Court of Appeals,
District of Columbia Circuit.
Argued Sept. 19, 1994.
Decided Nov. 15, 1994.
 
 Carolyn Elefant, Washington, DC, argued the cause and filed the briefs, for petitioners. Gregg D. Ottinger, Washington, DC, entered an appearance.
 Samuel Soopper, Atty., F.E.R.C., Washington, DC, argued the cause for respondent. On the brief were Jerome M. Feit, Sol., Joseph S. Davies, Deputy Sol., and Timm Abendroth, Atty., F.E.R.C., Washington, DC.
 Donald H. Clarke, Washington, DC, entered an appearance, for intervenor N.E.W. Hydro, Inc. McNeill Watkins, II, Washington, DC, entered an appearance for intervenor Wisconsin Elec. Power Co., Paul V. Nolan, Washington, DC, entered an appearance, for intervenor City of Oswego, NY. Gail A. Greely, Alameda, CA, entered an appearance, for intervenors Carl Hitchcock and Energie Development Co., Inc.
 Before: SILBERMAN, GINSBURG, and ROGERS, Circuit Judges.
 Opinion of the Court filed by Circuit Judge ROGERS.
 ROGERS, Circuit Judge:
 
 
 1
 The City of Oconto Falls, Wisconsin ("Oconto Falls") and the American Public Power Association petition for review of an order by the Federal Energy Regulatory Commission ("FERC") denying application of the Federal Power Act's municipal preference, 16 U.S.C. Sec. 800(a) (1988) ("Section 7(a)"), in licensing proceedings for "orphaned" projects, namely facilities for which the licensee files a notice of intent to apply for a relicense but neither the licensee nor any other applicant files a timely relicense application. Petitioners contend that FERC misinterpreted the language and legislative history of the Federal Power Act ("FPA"), as amended in 1986, in concluding that the Section 7(a) municipal preference does not apply to the Oconto Falls proceedings or to other orphaned project proceedings. While the FPA does not expressly address whether the statutory preference applies to orphaned projects, FERC concluded that the licensing of such projects is better categorized as relicensing than as original licensing. Because FERC's characterization of orphaned project licensing as relicensing is permissible and the municipal preference does not apply to relicensing, we deny the petition for review.
 
 I.
 
 2
 When Congress enacted the Federal Water Power Act in 1920, now the FPA, 16 U.S.C. Secs. 791a-828c (1988), it provided a statutory preference in hydroelectric licensing proceedings for states and municipalities over other applicants if the state or municipal plans were "equally well adapted" to accomplish the statutory purposes of conserving and utilizing regional water resources in the public interest. See 16 U.S.C. Sec. 800(a). The background to the legislative compromise embodied in the 1920 Act is summarized in Clark-Cowlitz Joint Operating Agency v. FERC, 775 F.2d 366, 376-78 (D.C.Cir.1985), vacated on other grounds, 826 F.2d 1074 (1987) (en banc), cert. denied, 485 U.S. 913, 108 S.Ct. 1088, 99 L.Ed.2d 247 (1988). Suffice it to say, Congress at that time sought both to reassure private investors seeking reasonable investment returns and to accommodate conservationists favoring public control of water resources. Congress thus authorized long-term licenses (up to 50 years) and compensation if the federal government or a private entity took over a project after expiration of a license, but also adopted the statutory tie-breaker provision favoring states and municipalities over private parties in both original and relicensing proceedings, thereby rejecting efforts to avoid application of the preference against incumbent licensees. Id. 775 F.2d at 377, 378.
 
 
 3
 When the original licenses issued under the FPA began to expire during the 1970's, Congress became concerned that if the municipal preference applied at the time of relicensing, privately operated projects would be transferred to municipalities, resulting in increased electrical costs for consumers. See Kamargo Corp. v. FERC, 852 F.2d 1392, 1394 (D.C.Cir.1988); S.REP. NO. 161, 99th Cong., 1st Sess. 5-6 (1985). Consequently, Congress amended the FPA in the Electric Consumers Protection Act, Pub.L. No. 99-495, 100 Stat. 1243 (1986), 16 U.S.C. Secs. 791a-828c ("1986 Amendments"). The 1986 Amendments limited the municipal preference to "original" licensing proceedings governed by Section 7(a) and eliminated the preference altogether in relicensing proceedings governed by Section 15.[1] Henceforth, "a state or municipality can prevail over an incumbent investor-owned utility that seeks to renew a license if the former's proposal is 'best adapted,' [but] 'insignificant differences ... between competing applications are not determinative and shall not result in the transfer of a project.' " Kamargo Corp., 852 F.2d at 1394 (quoting 16 U.S.C. Sec. 808(a)(2)(1988)) (emphasis omitted).
 
 
 4
 As part of FERC's rulemaking implementing the 1986 Amendments, the agency addressed whether Section 7(a), as amended, applied to the issuance of licenses for existing "minor projects."[2] Minor projects are projects that do not involve more than two thousand horsepower of capacity, and for which FERC's longstanding practice has been to waive the requirements of Sections 14 and 15 of the FPA as well as other statutory and regulatory requirements.[3] The 1986 Amendments presented the question whether such a minor project licensing which the agency denominates a subsequent licensing is a relicensing governed by Section 15, notwithstanding FERC's earlier waiver of Section 15 relicensing requirements, or an "original" licensing governed by Section 7(a) and to which the municipal preference applies.
 
 
 5
 In Order No. 513, FERC concluded that a subsequent, or minor project license is a relicense and hence the Section 7(a) municipal preference does not apply. Order No. 513, at 31,443. FERC interpreted the term "original" inserted in Section 7(a), as amended, to mean "first," concluding that by adopting the 1986 Amendments, Congress intended to eliminate the municipal preference in all licensing proceedings that follow the expiration of a project's first license and thereby eliminate an applicant's governmental status as a decisional factor in awarding other than original licenses. Id.
 
 
 6
 Order No. 513 also prescribed procedures for the processing of applications for orphaned projects, such as the Oconto Falls project. Orphaned projects result when a licensee files a notice of intent to file for relicensing, but thereafter fails to file a timely application and, by filing the notice of intent, dissuades others from applying within the regulatory period. In Order No. 513, FERC provided a mechanism whereby applicants could compete for orphaned projects notwithstanding their initial failure to file a timely application.[4] However, Order No. 513 did not address whether the licensing of an orphaned project is a relicensing proceeding governed by Section 15 or an original licensing to which the Section 7(a) municipal preference applies. That question was answered by FERC in the instant case.
 
 II.
 
 7
 In 1967, FERC issued a twenty-five year license to the Wisconsin Michigan Power Company to operate the Oconto Falls Project. Transferred to the Wisconsin Electric Power Company (WEPCO) in 1977, the Oconto Falls license expired on December 31, 1993. Although WEPCO initially filed a notice of intent to file an application for a relicense for the Oconto Falls Project, it failed to file an application by December 31, 1991, as required by FERC regulations. See 18 C.F.R. Sec. 16.20(c) (applicant must file 24 months prior to expiration of license). This failure "orphaned" the Oconto Falls project and prompted FERC to solicit potential applicants. See id. at Sec. 16.25. The City of Oconto Falls was one of three parties to submit an application.
 
 
 8
 Thereafter, Oconto Falls petitioned FERC to declare that the Section 7(a) municipal preference applied in the licensing proceeding for the Oconto Falls project. The American Public Power Association filed comments in support of Oconto Falls' position. In response, FERC decided that orphaned project proceedings were not "original" license proceedings governed by Section 7(a), but rather were relicensing proceedings governed by Section 15. Wisconsin Electric Power Co., 62 FERC p 61,064, at 61,307-08 (Jan. 22, 1993) ("Declaratory Order"). Relying on its reasoning in Order No. 513, FERC concluded that orphaned project licenses could not be "original" licenses because a previous license had been issued for such projects and had, by definition, expired. The agency found "no meaningful distinction" between an orphaned project license and a subsequent license, to which the agency had ruled the municipal preference inapplicable. Id. Hence, petitioner Oconto Falls was not entitled to the municipal preference in competing for the orphaned Oconto Falls project. Id. at 61,313. FERC denied petitions for rehearing filed by Oconto Falls and the American Public Power Association, and both parties sought review of the Declaratory Order in this court.
 
 
 9
 In addressing petitioners' challenges to FERC's decision that Section 15 rather than Section 7(a) governs the licensing of the orphaned Oconto Falls project, we apply the methodology set forth in Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The court must first determine whether "Congress has directly spoken to the precise question at issue." 467 U.S. at 842, 104 S.Ct. at 2781. If Congress has so spoken, the court must "give effect to the unambiguously expressed intent of Congress." Id. at 842-43, 104 S.Ct. at 2781. If, however, the court determines that "the statute is silent or ambiguous with respect to the specific issue," the court should defer to the agency's interpretation if its construction of the statute is reasonable. Id. at 843, 104 S.Ct. at 2781. The deference owed is "considerable" where, as here, the agency is interpreting the statute that it is authorized to administer. Kamargo Corp., 852 F.2d at 1397. In such cases, the court should defer to the agency so long as the agency's interpretation is permissible. Chevron, 467 U.S. at 842-44, 104 S.Ct. at 2781-82.
 
 
 10
 Petitioners contend that FERC's refusal to apply Section 7(a) to the licensing of orphaned projects misinterprets the language and the legislative intent of the FPA, as amended in 1986, creates an illogical gap in the statute, and conflicts with the agency's regulations for orphaned projects and surrendered projects. Petitioners, however, have not demonstrated that Congress has spoken directly to the question at issue here, namely whether orphaned project licensing proceedings should be characterized as "original" or relicensing proceedings.[5] Nor have petitioners demonstrated as impermissible FERC's conclusion that Section 15 rather than Section 7(a) governs the licensing of the orphaned Oconto Falls project and other orphaned projects. We address each of petitioners' contentions.
 
 
 11
 First, petitioners contend that FERC's interpretation of the word "original" in Section 7(a) is "unnecessarily literal" and "formalistic," and a misconstruction of the purpose of the 1986 Amendments. They maintain that when Congress adopted the 1986 Amendments to protect privately-owned projects from forced transfers to public entities at the expiration of an existing license, Congress never intended to deny application of the municipal preference to the licensing of orphaned projects and thereby enable licensees and private developers to determine whether the municipal preference would apply.
 
 
 12
 In the Declaratory Order, FERC adhered to the same interpretation of Section 7(a) that it adopted in Order No. 513, a decision that petitioners admit they do not, and indeed cannot, challenge at this time. 62 FERC p 61,064, at 61,312-13. In Order No. 513, FERC concluded that by enacting the 1986 Amendments, Congress meant to "place all applicants in a relicensing on an equal footing, to deny any applicant or class of applicants a preference." Order No. 513, at 31,443. FERC adhered to this view in the instant case.[6] This reading is not contrary to the plain meaning of the statute, and it is supported by both the House and Senate reports on the 1986 Amendments. See H.R.REP. NO. 507, 99th Cong., 2d Sess. 10, M.S. Code Cong. & Admin.News, 1986, p. 2496. (1986) (amendments to make municipal preference "inapplicable in proceedings following expiration of an existing license"); id. at 16 ("All applicants will stand on equal footing in terms of obtaining a new license."); S.REP. NO. 161, 99th Cong., 1st Sess. 8 (1985) (preference "does not apply when a new license is issued for a project that had been previously licensed").
 
 
 13
 The agency's interpretation of legislative intent is further supported by Section 15, as amended, which makes the municipal preference inapplicable in relicensing proceedings even when the licensee is not seeking to renew the license.[7] 16 U.S.C. Sec. 808(a). Thus, while petitioners are correct that one purpose behind the 1986 Amendments was to protect private licensees from forced transfers to municipalities--a purpose inapplicable in orphaned project proceedings--Section 15, as amended, reveals that this was not the only congressional purpose in amending the FPA.[8]
 
 
 14
 Second, petitioners contend that FERC's decision creates an illogical and unintended gap in the FPA. While the Declaratory Order precludes application of Section 7(a) to orphaned projects, they maintain that Section 15 cannot apply in its place because Section 15 requires applicants for new licenses to file two years before the expiration of the existing license, and applicants for orphaned projects, by definition, must file after this deadline. It follows, petitioners argue, that as a result of FERC's interpretation, neither Section 7(a) nor Section 15 can apply to the licensing of orphaned projects.[9] However, as FERC explains, the gap is imaginary. Under FERC's interpretation, the relicensing provisions of Section 15 govern orphaned project proceedings, notwithstanding its twenty-four month requirement because that requirement is neither a component of the definition of a relicensing proceeding nor a prerequisite to the application of Section 15 to the licensing of orphaned projects.
 
 
 15
 The Declaratory Order makes clear that the procedures promulgated for orphaned projects in Order No. 513 were designed to remedy the "unfairness" to competitors that results when a licensee files a notice of intent to apply for relicensing and then fails to file a timely application. Because this unfairness cannot, by definition, be remedied until after Section 15's two-year deadline expires, FERC rejected Oconto Falls' position that the deadline rendered Section 15 inapplicable. The agency points out that under the Oconto Falls approach, municipalities would have the benefit of the statutory preference when a licensee files a notice of intent to seek relicensing but fails to make a timely application, even though the preference is inapplicable when a licensee declines ab initio to seek relicensing and other applicants apply in a timely manner. Therefore, because Congress has not spoken directly to the issue, FERC reasonably rejected the suggestion that Congress intended, in the 1986 Amendments, to allow the anomalous situation in which an incumbent licensee determines whether the municipal preference applies. 62 FERC p 61,046, at 61,313 n. 39. Cf. Heckler v. Chaney, 470 U.S. 821, 852, 105 S.Ct. 1649, 1666, 84 L.Ed.2d 714 (1985); but see Abbott Laboratories v. Young, 920 F.2d 984, 994 (D.C.Cir.1990), cert. denied, 502 U.S. 819, 112 S.Ct. 76, 116 L.Ed.2d 49 (1991).
 
 
 16
 Third, petitioners contend that the Declaratory Order conflicts in two respects with FERC's regulations. Given the special deference due to the agency's construction of its regulations, we find no basis for concluding that the agency's construction is unreasonable. See Udall v. Tallman, 380 U.S. 1, 16-17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965).
 
 
 17
 Petitioners contend that FERC ignored the "plain language" of its orphaned project regulations promulgated in Order No. 513. These regulations set forth the procedures by which applicants may compete for an orphaned facility and provide that, after filing a notice of intent, an applicant "[m]ay apply for a license under Part I of the Federal Power Act and Part 4 of this chapter (except Sec. 4.38)...." See 18 C.F.R. Sec. 16.25(b)(1). Petitioners maintain that the reference to Part 4 means that FERC considers an orphaned project license to be an original license because Part 4 sets forth the procedure to apply for an original license. Petitioners further argue that the express exemption for orphaned projects from 18 C.F.R. Sec. 4.38 undercuts FERC's claim in the Declaratory Order that the proceedings are also exempt from the municipal preference, which is contained in Sec. 4.37. This argument fails for several reasons.
 
 
 18
 As noted, Order No. 513 did not address the question whether the municipal preference applies in orphaned project proceedings. Thus, FERC aptly described the reference to Part 4 as "an unreliable basis on which to try to deduce the Commission's position." 62 FERC p 61,064, at 61,312. Moreover, the reference to Part 4 is ambiguous because Part 4 contains the substantive and procedural filing requirements for all licenses, not exclusively original ones. The orphaned project regulations also subject orphaned project applicants to other requirements that apply exclusively to relicenses, while expressly exempting orphaned project license applicants from Section 4.38, which applies only to original licenses. See id. Finally, contrary to petitioners' contention, FERC's non-invocation of Section 16.13 (standards for issuing licenses to new licensees under Section 15) cannot reasonably be viewed as indicative of FERC's intention that Section 15 would not govern orphaned project licensing. FERC did not consider whether Section 15 governed orphaned project licensing when it issued Order No. 513, and consequently it had no occasion to consider which provisions would best indicate that orphaned project proceedings are relicensings. Nothing in the orphaned project regulations compels treating orphaned project proceedings as original licensing proceedings. Thus, FERC could reasonably decline to base its decision in the instant case on inferences drawn from the language of the orphaned project regulations promulgated in Order No. 513.
 
 
 19
 Finally, petitioners contend that FERC's decision conflicts with the agency's approach to surrendered projects. Under FERC's regulations, a surrendered project is one for which the original licensee files a notice of intent not to file for a relicense and no one else files a timely application for the license. See 18 C.F.R. Sec. 16.26. Pursuant to Order No. 513, FERC treats the licensing proceeding for a surrendered facility as an original rather than a relicensing proceeding even though FERC had issued a previous license for the site. Order No. 513, at 31,450-51. According to FERC, these licenses are considered "original" licenses because the agency can alter or even "moth-ball" projects after licenses are surrendered. See 18 C.F.R. Secs. 6.1-6.5, 16.26. Petitioners respond that, in practice, surrendered projects continue to operate so that no practical difference exists between surrendered and orphaned facilities, and therefore, the agency should treat them the same.
 
 
 20
 While similarities exist between surrendered and orphaned facilities, FERC's decision to treat them differently is not beyond the pale. In particular, it is of significance that surrendered projects occur only after a licensee files a notice of intent not to seek relicensing and competitive applicants fail to apply for the license. Orphaned projects, by contrast, do not result from the absence of viable applicants, but rather from the fact that the licensee's notice of intent to seek relicensing dissuaded competitors from applying for the license. As a result, the orphaned project regulations contemplate the continued operation of the projects and were promulgated expressly to ensure fair competition for these project licenses. Because the surrendered project regulations contemplate the cessation of projects for which no applications were filed, FERC could reasonably conclude that licenses issued for these projects are original licenses.
 
 
 21
 For these reasons, petitioners have failed to demonstrate that the Declaratory Order, concluding that Section 7(a) does not apply to orphaned project licensing proceedings, is contrary to clear legislative intent or represents an impermissible interpretation of the FPA, as amended in 1986. We think it fair to say that Congress never envisioned the problem of orphaned projects. The statute appears to assume, quite reasonably, that incumbent licensees that file notices of intent to apply for relicensing will ultimately do so. FERC's regulations for orphaned projects, and its policy of not applying a municipal preference in such proceedings, address the apparently rare situation when the relevant parties do not act according to Congress' assumptions. The statute is simply silent on the subject of how orphaned projects should be handled. It seems plain to us that FERC's decision on how to treat such cases is a permissible construction of the statute and its own regulations. Accordingly, we deny the petition for review.
 
 
 
 [1]
 Section 7(a) had provided:
 In issuing preliminary permits hereunder or licenses where no preliminary permit has been issued and in issuing licenses to new licensees under section 808 [section 15] of this title the Commission shall give preference to applications therefor by States and municipalities ...
 16 U.S.C. Sec. 800 (amended by 16 U.S.C. Sec. 800(a)) (emphasis added). The 1986 Amendments deleted the italicized language, and inserted the word "original" to modify the word "licenses." Section 7(a), as amended, provides:
 In issuing preliminary permits hereunder or original licenses where no preliminary permit has been issued, the Commission shall give preference to applications therefor by States and municipalities, provided the plans for the same are deemed by the Commission equally well adapted, ... to conserve and utilize in the public interest the water resources of the region....
 16 U.S.C. Sec. 800(a).
 In 1986, Congress also amended Section 15 to substitute the word "existing" for the word "original." Section 15, as amended, provides in pertinent part:
 If the United States does not, at the expiration of the existing license, exercise its right to take over ... any project ... of the licensee ... the commission is authorized to issue a new license to the existing licensee ... or to issue a new license ... to a new licensee, which license may cover any project ... covered by the existing license....
 16 U.S.C. Sec. 808(a)(1).
 
 
 [2]
 Hydroelectric Relicensing Regulations Under the Federal Power Act, FERC Stats. & Regs., Regulations Preambles 1986-1990 p 30,854 (1989) (Order No. 513)
 
 
 [3]
 See 16 U.S.C. Sec. 807 (Section 14) (right of United States to take over projects after the licenses expire); 16 U.S.C. Sec. 803(i) (waiver authority for minor projects); 18 C.F.R. Sec. 16.2 (defining subsequent license as a license issued after expiration of a minor license not subject to sections 14 and 15)
 
 
 [4]
 Order No. 513, at 31,450 (codified at 18 C.F.R. Sec. 16.25)
 
 
 [5]
 In contexts relevant here, we have noted that the word "original" is not without ambiguity. Cf. Clark-Cowlitz, 775 F.2d at 376
 
 
 [6]
 We are unpersuaded by petitioners' argument that FERC's reliance on its reasoning in Order No. 513 "is flawed." While relevant portions of Order No. 513 dealt with subsequent minor project licenses rather than orphaned project licenses and the two types of licenses differ in significant ways, this does not alter FERC's understanding of the legislative purpose behind the 1986 Amendments nor does it cast doubt on the agency's decision to apply that understanding to the licensing of orphaned projects
 
 
 [7]
 As FERC points out, the marginal preference Section 15, as amended, creates for incumbents does not contradict the agency's conclusion that Congress enacted the 1986 Amendments in order to place all relicensing competitors on an equal footing with regard to governmental or private status. While amended Section 15 prevents project transfers based on insignificant differences among competing applications, the "best adapted" project still prevails even when the incumbent seeks relicensing. 16 U.S.C. Sec. 808(a)(2); Kamargo Corp., 852 F.2d at 1394
 
 
 [8]
 Petitioners also suggest that FERC's interpretation allows private developers to manipulate and avoid the municipal preference. FERC can issue sanctions for abuses, and, on this record, we cannot conclude that this remedy would be inadequate. See Malta Irrigation Dist. v. FERC, 955 F.2d 59, 64-66 (D.C.Cir.1992)
 
 
 [9]
 We find without merit FERC's contention that petitioners' claim is directed at the orphaned project regulations promulgated under Order No. 513 and, therefore, is untimely. FERC states that "[t]he substance of petitioners' claim is that the 'orphaned project' regulations are ultra vires because they permit the Commission to solicit applications for a license after section 15(c)(1)'s two year time limit has expired." Hence, it comes too late, FERC continues, because an attack on an agency's regulations after expiration of the period for review is rarely permitted. As we understand petitioners' claim, it is that the existence of the asserted gap demonstrates that the municipal preference applies to orphaned project proceedings. In other words, petitioners challenge FERC's interpretation of the orphaned project regulations, not the regulations themselves, a challenge which petitioners acknowledge would be too late